IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TERRANCE BURKE #258737, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 3:15-cv-00101 |
| v. ) | Judge Aleta A. Trauger |
| ) | Magistrate Judge Brown |
| TENNESSEE DEPARTMENT OF ) | |
| CORRECTION, *et al.*, ) | Jury Demand |
| ) | |
| Defendants. ) | |

To: The Honorable Aleta A. Trauger, United States District Judge

## REPORT AND RECOMMENDATION

For the reasons explained below, the Magistrate Judge **RECOMMENDS** that (1) Defendants' Motion for Summary Judgment (Doc. 99) be **GRANTED**; (2) Plaintiff's claims arising under the Eighth Amendment and Fourteenth Amendment be **DISMISSED WITH PREJUDICE**; (3) Plaintiff's state law claims be **DISMISSED WITHOUT PREJUDICE**; (4) acceptance and adoption of this Report and Recommendation constitute the **FINAL JUDGMENT** in this action; and (5) any appeal **NOT BE CERTIFIED** as taken in good faith pursuant to 28 U.S.C. § 1915(a)(3).

### I. INTRODUCTION AND BACKGROUND

**A. Background**

Proceeding *pro se* and *in forma pauperis*, Plaintiff filed his Complaint on January 30, 2015, requesting injunctive and monetary relief for violations of his rights under the Eighth and Fourteenth Amendments and state law. (Doc. 1). Plaintiff is an inmate in the custody of the Tennessee Department of Correction ("TDOC"). At the time of the events giving rise to the

1

Complaint, Plaintiff was housed at Riverbend Maximum Security Institution ("RMSI") in maximum security custody. (Doc. 1, p. 2) (Doc. 102, p. 2 ¶ 6). Plaintiff has since been transferred to close custody at Morgan County Correctional Complex ("MCCC"). (Doc. 54) (Doc. 102, p. 2 ¶ 6).

Plaintiff, who is black, claims that Defendants racially discriminated against him in violation of the Equal Protection Clause of the Fourteenth Amendment when they released a white inmate from administrative segregation and continued to hold Plaintiff in segregation. (Doc. 1, pp. 3-15, 21-22 ¶¶ 1-23, 25-27, 39). Though Plaintiff attempted to resolve this issue through RMSI's grievance system, Plaintiff claims his grievances were not handled properly. (Doc. 1, pp. 7-8 ¶¶ 9-12). Plaintiff also claims that the conditions of his confinement at RMSI violated the Eighth Amendment. Plaintiff alleges, *inter alia*, that TDOC does not employ a hygienist to determine how much soap, toothpaste, and deodorant is needed monthly; Plaintiff was forced to go without soap because the soap packets provided were too small; Plaintiff was allowed only three showers each week; Commissioner Schofield took away ketchup on chicken tenders day; Plaintiff had to eat a corndog without mustard; Plaintiff's meals were not sufficient; inmates and officers in the kitchens were urinating and defecating in the food; indigent hygiene kits were not properly placed in bags and delivered through the flap on his cell door; rats ate from the food trays; correctional officers were not kept inside the maximum security pods or showers; and Plaintiff had to use a shirt to mop his floor. (Doc. 1, pp. 13-24 ¶¶ 23-24, 27-31, 34, 37-38, 40-41, 43-45). Plaintiff further alleges that he developed a "nerve sickness," was treated at a hospital, and was given medication. (Doc. 1, p. 23 ¶ 42). Finally, Plaintiff alleges that various Defendants violated state law through embezzlement, perjury, official misconduct, and fraud. (Doc. 1, pp. 7-8, 18-21 ¶¶ 9, 12, 33-35, 39).

Plaintiff seeks the following forms of injunctive relief: release Plaintiff from maximum security; install cameras in the maximum security kitchen; assign kitchen stewards to supervise inmates in the maximum security kitchen; improve the maximum security pods and assign correctional officers to the pods; hire a hygienist; provide mops to maximum security inmates; "correct any listed abuse of power, racial misconduct, and unconstitutional standard of living in the maximum security pod units" in TDOC; and provide inmates with bars of soap instead of liquid soap. (Doc. 1, pp. 25-26). Plaintiff also seeks monetary damages from TDOC and the individual Defendants. (Doc. 1, p. 3).[1]

On March 19, 2015, the District Judge screened the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a), and found colorable claims under the Fourteenth Amendment for race-based confinement decisions and under the Eighth Amendment for poor conditions of confinement. (Docs. 3, 4). Plaintiff's claims based on Defendants' failure to respond to grievances and claims for monetary damages against TDOC and against the individual Defendants in their official capacities were dismissed with prejudice. (Doc. 4, p. 2). The case was then referred to the Magistrate Judge. (Doc. 4, p. 3). Defendants moved for summary judgment on May 23, 2016. (Doc. 99).[2] Plaintiff filed a response. (Doc. 103). Defendants' Motion is now properly before the Court.

---

[1] The Complaint does not indicate whether Defendants, all TDOC employees, are sued in their official or individual capacities. Upon review of the record, the course of the proceedings suggests that both theories of liability apply. *See Moore v. City of Harriman*, 272 F.3d 769, 772, 772 n.1 (6th Cir. 2001) (explaining that courts may look to the course of the proceedings to ascertain which theory of liability is invoked and that the defense of qualified immunity is particularly indicative that the defendant has actual knowledge of the potential for individual liability).

[2] Contrary to Plaintiff's argument that Defendant's Motion for Summary Judgment is untimely (Doc. 103), the Motion was properly filed before the dispositive motion deadline of May 24, 2016 (Doc. 92).

**B. Undisputed Facts**

Plaintiff did not respond to Defendants' Statement of Facts as required by Local Rule 56.01(c). Plaintiff's response to Defendants' Motion simply rehashes the conclusory allegations in his Complaint and asserts, without evidentiary support, that Defendants' Motion should be denied. (Doc. 103). "Failure to respond to a moving party's statement of material facts . . . within the time periods provided by [the local rules of court] shall indicate that the asserted facts are not disputed for purposes of summary judgment." Local Rule 56.01(g). Because Plaintiff did not respond to Defendants' Statement of Facts, those facts are deemed undisputed for purposes of this analysis.

As established by affidavits of Defendant Vance, the relevant facts are as follows: Plaintiff "has a history of attempted escapes and flight from law enforcement" and is a confirmed gang member affiliated with the Black Gangster Disciples gang. (Doc. 102, p. 1 ¶¶ 3-4). Plaintiff "also has a pending federal detainer issued by the United States Marshal Service in the Western District of Tennessee." (Doc. 102, p. 1 ¶ 3). On December 28, 2011, Plaintiff and an inmate named Bobby Teaster were found with tools that are typically used to escape. (Doc. 102, p. 1 ¶ 5). Plaintiff and Teaster were both charged with a prison disciplinary violation for conspiracy to violate state law. (Doc. 102, p. 1 ¶ 5). Because of this offense, Plaintiff was placed in punitive segregation for thirty days beginning on January 20, 2012. (Doc. 102, p. 2 ¶ 6).

Plaintiff was released from punitive segregation on February 19, 2012, but due to the security threat posed by Plaintiff, he was placed in administrative segregation. (Doc. 102, p. 2 ¶ 6). At RMSI, inmates held in administrative segregation are considered maximum security custody level. (Doc. 102, p. 2 ¶ 6). In accordance with TDOC policy, Plaintiff's placement in administrative segregation was reviewed approximately every thirty days. (Doc. 102, p. 2 ¶ 7).

4

Plaintiff remained in administrative segregation until August 18, 2015, at which time his custody level was decreased from maximum security to close security, and he was transferred to MCCC. (Doc. 102, p. 2 ¶ 6).

Decisions regarding administrative segregation are made on a case-by-case basis. (Doc. 102, p. 2 ¶ 10). The length of an inmate's stay in administrative segregation is based on a number of factors, not a rigid formula. (Doc. 102, p. 2 ¶ 10). Plaintiff was held in administrative segregation on account of "his demonstrated prison escape planning, his previous escape and flight history, his gang affiliation, and the fact that he had a pending federal detainer, among other security-related factors." (Doc. 102, p. 2 ¶ 9). The length of time Teaster, his white companion, was held in administrative segregation would not affect the length of time Plaintiff was held in administrative segregation, and vice versa. (Doc. 102, p. 2 ¶ 10).

At the time relevant to this lawsuit, inmates received one packet of soap each day. (Doc. 102, p. 3 ¶ 13). Soap was given out on a daily basis to avoid intentional waste. (Doc. 102, p. 3 ¶ 13). Pursuant to TDOC policy, maximum security inmates receive three showers each week. (Doc. 102, p. 3 ¶ 14). While all inmates are permitted to purchase hygienic products through the commissary, indigent inmates are given an indigent kit every month which includes soap, a toothbrush, toothpaste, a comb, shampoo, and deodorant. (Doc. 102, p. 2 ¶ 11). Inmates are also given a cleaning kit three times each week, which included "chemicals, a toilet brush, a sponge and other necessary cleaning items, as requested." (Doc. 102, p. 3 ¶ 15). Defendant Vance affirms that he never saw a rat in RMSI in the twenty-six years he worked there, nor was it ever reported to him that rats were eating off of food trays. (Doc. 102, p. 3 ¶ 16). Defendant Vance also affirms that maximum security inmates receive food from the main kitchen at RMSI, food service workers in the unit are supervised, and the food provided is nutritionally adequate. (Doc.

5

49, p. 2 ¶¶ 3, 7). According to Defendant Vance, the inmates' showers are secure, and the correctional officer in the unit control room is able to directly see into the pods and can see the shower doors. (Doc. 49, p. 2 ¶ 4).

## II.  STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court must determine whether there is a "genuine issue for trial," that is, whether there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248-49 (1986) (citations omitted). Where, as here, the moving party seeks summary judgment on an issue for which it does not bear the burden of proof at trial, the moving party may meet its burden by showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 325 (1986). Once the moving party meets that burden, the nonmoving party must set forth "specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted) (emphasis in original).

"In evaluating the evidence, the court must draw all inferences in the light most favorable to the nonmoving party." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citing *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 587). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 586. "A mere scintilla of evidence is insufficient." *Skousen v. Brighton High School*, 305 F.3d 520, 526 (6th Cir. 2002) (citing *Anderson*, 477 U.S. at 252). In order to withstand summary judgment, the nonmoving party must demonstrate that

the record contains enough evidence in support of its position that a jury could reasonably find in its favor. *Anderson*, 477 U.S. at 249-50, 252.

### III. ANALYSIS

#### A. Plaintiff's § 1983 Claims

To state a claim under § 1983, Plaintiff must show that a person acting under the color of state law deprived Plaintiff of a constitutional or federal right. *See Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)).

##### 1. Equal Protection

Plaintiff claims that his rights under the Equal Protection Clause were violated when he was held in maximum security administrative segregation longer than his white companion, Teaster, because prison officials racially discriminated against Plaintiff.

Prisoners "are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." *Brand v. Motley*, 526 F.3d 921, 924 (6th Cir. 2008) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974)). However, "[t]he Equal Protection Clause . . . does not require the exact same treatment of all persons nor prevent government officials from exercising discretionary authority which results in differing treatment." *Searcy v. Gardner*, No. 3:07-0361, 2008 WL 400424, at *4 (M.D. Tenn. Feb. 11, 2008). In order to establish a violation of the Equal Protection Clause, an inmate must prove through direct or circumstantial evidence that a racially discriminatory intent or purpose was a factor in the prison officials' decision. *Copeland v. Machulis*, 57 F.3d 476, 480 (6th Cir. 1995) (citing *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 265-66 (1977)). "He must establish that a government official intentionally discriminated against him

7

because of his membership in a protected class." *Searcy*, No. 3:07-0361, 2008 WL 400424, at *4 (citing *Henry v. Metropolitan Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990)).

Here, Plaintiff has not provided any evidence of a discriminatory motive or purpose behind the decision to keep him in administrative segregation. He makes only conclusory allegations that he received different treatment because of his race. Allegations alone do not suffice at the summary judgment stage. *Shreve v. Franklin Cty., Ohio*, 743 F.3d 126, 132 (6th Cir. 2014) (quoting *Celotex Corp.*, 477 U.S. at 324) (explaining that a party must "go beyond the pleadings" to establish that a fact is genuinely disputed). Defendants have provided a rational, race-neutral explanation for Plaintiff's classification: administrative segregation decisions are made on a case-by-case basis, and Plaintiff posed an ongoing flight and security risk. (Doc. 102, p. 2 ¶¶ 9-10). In light of Defendants' uncontested nondiscriminatory purpose, the Magistrate Judge concludes that no reasonable jury could find that Plaintiff's Equal Protection rights were violated. Accordingly, the Magistrate Judge recommends that Plaintiff's Fourteenth Amendment claim be **DISMISSED WITH PREJUDICE**.

2. **Conditions of Confinement**

Plaintiff claims that his rights under the Eighth Amendment were violated by the conditions of his confinement at RMSI. Plaintiff's complaints concern access to hygienic products and showers, the quality and quantity of food provided, sanitary conditions at the prison including the presence of rats and access to cleaning products, and the security of the pods and showers. (Doc. 1, pp. 13-24). Plaintiff also alleges, without supporting documentation, that he developed a "nerve sickness" as a result of the conditions of his confinement. (Doc. 1, p. 23 ¶ 42).

The Eighth Amendment prohibits prison conditions involving "the wanton and unnecessary infliction of pain," or the deprivation of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004). To succeed in an Eighth Amendment challenge, an inmate must establish the following two prongs: (1) that he was denied a single, identifiable necessity of civilized human existence (the "objective" prong); and (2) that the defendant prison official acted with a sufficiently culpable state of mind (the "subjective" prong). *Hadix*, 367 F.3d at 525 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000)). In order to satisfy the objective prong, the inmate must prove "extreme deprivations" under contemporary standards of decency. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citation omitted). Conditions which are restrictive or even harsh do not rise to the level of a constitutional violation because such conditions are "part of the penalty that criminal offenders pay for their offenses against society." *Rhodes*, 452 U.S. at 347. As for the subjective prong, the inmate must prove that prison officials acted with "deliberate indifference" to the conditions of his confinement. *Wilson*, 501 U.S. at 303 (citations omitted). Deliberate indifference is comparable to the criminal standard of "subjective recklessness," and requires prison officials to have knowingly omitted to take reasonable steps to avoid a substantial risk of serious harm. *Hadix*, 367 F.3d at 525-526 (citing *Farmer v. Brennan*, 511 U.S. 825, 837, 839-40 (1970)).

Not only has Plaintiff failed to put forth evidence in support of his Eighth Amendment claims, but Defendants have also submitted unrebutted testimony which undermines Plaintiff's allegations. For example, Plaintiff has provided no evidence to support his allegations that maximum security kitchen staff contaminate the food and that rats crawl on food trays left on the floor. Defendant Vance testified, based on his personal knowledge as Unit Manager at RMSI,

that he was not aware of the presence of rats (Doc. 102, p. 3 ¶ 16) and that to his knowledge food served to maximum security inmates was prepared under supervision at the main kitchen at RMSI and was nutritionally adequate (Doc. 49, p. 2 ¶¶ 3, 7). Plaintiff's allegations related to the provision of hygienic products, sanitary products, and condiments likewise do not satisfy the objective prong of a successful Eighth Amendment claim. These are not extreme violations of contemporary standards of decency given Defendant Vance's testimony that all inmates are provided with basic hygiene, sanitation, and adequate nutrition. (Doc. 49, p. 2 ¶ 8). Nor does Plaintiff submit evidence to rebut Defendant Vance's statement that inmates' showers are secure and the officer in the unit control room can see into the pods and can see the shower doors. (Doc. 49, p. 2 ¶ 4).

Finally, because Plaintiff has provided no medical documentation of his alleged "nerve sickness," the Magistrate Judge finds that no reasonable jury would interpret that allegation as evidence of serious harm or extreme deprivation under contemporary standards of decency. Even if it did satisfy this threshold, Plaintiff alleged that he had been to the hospital and was given medication to treat this ailment. "A prisoner has no right to choose a specific form of medical treatment, so long as the treatment provided is reasonable." *Farmer v. Scioto Cty. Bd. of Comm'rs*, No. 1:14-CV-251, 2014 WL 3734334, at *4 (S.D. Ohio July 29, 2014) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)). Plaintiff has done nothing to establish that the medical treatment provided is inadequate. Accordingly, the Magistrate Judge recommends that Plaintiff's Eighth Amendment claims be **DISMISSED WITH PREJUDICE**.[3]

---

[3] Even if Plaintiff were able to establish the objective prong of his Eighth Amendment claims, he has not provided evidence to establish the subjective prong.

### 3. Additional Grounds for Dismissal

Defendants contend that Plaintiff's claims for injunctive relief are moot as Plaintiff has been transferred from RMSI to MCCC. As Plaintiff is no longer incarcerated at RMSI, the Magistrate Judge agrees that Plaintiff's claims for injunctive relief at RMSI are now moot. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (explaining that a prisoner's claims for injunctive relief related to the conditions of his confinement are mooted by his transfer to another facility).

Defendants next argue that any claims arising prior to February 2, 2014 are time-barred. Federal courts in the state of Tennessee apply Tennessee's one-year statute of limitations to claims arising under § 1983. *Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 843 (6th Cir. 2015) (citations omitted). Pursuant to the prison mailbox rule, "a pro se prisoner's complaint is deemed filed when it is handed over to prison officials for mailing to the court. . . . [and] absent contrary evidence, a prisoner does so on the date he or she signed the complaint." *Brand*, 526 F.3d at 925 (citations omitted). As Plaintiff signed his Complaint on January 30, 2015 (Doc. 1, p. 3), and as the envelope in which the Complaint was sent was stamped "received" by the RMSI mailroom on January 30, 2015, Plaintiff's Complaint is deemed filed on January 30, 2015. It is unclear which, if any, alleged violation occurred prior to January 30, 2014. To the extent that any alleged violation occurred prior to that date, the Magistrate Judge agrees that Plaintiff's claims related to that violation may be time-barred.

Defendants argue that Plaintiff's § 1983 claims based on the doctrine of *respondeat superior*, if any, should be dismissed. "It is well-settled that '[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under the theory of *respondeat superior*.'" *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) (quoting *Ashcroft v.*

11

*Iqbal*, 556 U.S. 662, 676 (2009)). Plaintiff's Complaint does not clearly identify which, if any, claims are brought under the theory of *respondeat superior*. As there are already ample grounds to dismiss Plaintiff's claims, the Magistrate Judge declines to explore this defense.

Defendants argue that the monetary claims against Defendants in their official capacities should be dismissed. As the District Judge has already dismissed these claims (Doc. 4, p. 2), no further relief is needed.

Finally, Defendants assert that they are entitled to qualified immunity from Plaintiff's claims for monetary damages against them in their individual capacities. The Magistrate Judge agrees. "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cty., Tenn.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). There are two steps to the qualified immunity inquiry: "First, viewing the facts in the light most favorable to the plaintiff, has the plaintiff shown that a constitutional violation has occurred? Second, was the right clearly established at the time of the violation?" *Id.* at 538-39 (citation omitted). Here, the inquiry may be resolved at the first step because Plaintiff has failed to establish that a constitutional violation occurred. Accordingly, the Magistrate Judge concludes that Defendants are entitled to qualified immunity in their individual capacities.

## B. State Law Claims

Plaintiff's Complaint contains vague allegations of embezzlement, perjury, official misconduct, and fraud. (Doc. 1, pp. 7-8, 18-21 ¶¶ 9, 12, 33-35, 39). Because the Magistrate Judge recommends dismissal of Plaintiff's federal claims, the Magistrate Judge also recommends

that the Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims and **DISMISS** Plaintiff's state law claims **WITHOUT PREJUDICE**. *See* 28 U.S.C. § 1367(c)(3); *Gamel v. City of Cincinnati*, 625 F.3d 949, 952 (6th Cir. 2010).

## IV. RECOMMENDATION

For the reasons explained above, the Magistrate Judge **RECOMMENDS** that (1) Defendants' Motion for Summary Judgment (Doc. 99) be **GRANTED**; (2) Plaintiff's claims arising under the Eighth Amendment and Fourteenth Amendment be **DISMISSED WITH PREJUDICE**; (3) Plaintiff's state law claims be **DISMISSED WITHOUT PREJUDICE**; (4) acceptance and adoption of this Report and Recommendation constitute the **FINAL JUDGMENT** in this action; and (5) any appeal **NOT BE CERTIFIED** as taken in good faith pursuant to 28 U.S.C. § 1915(a)(3).

The parties may file and serve written objections to the findings and recommendations made herein within fourteen (14) days of receipt of this Report and Recommendation. Fed. R. Civ. P. 72(b). Parties opposed to such objections must respond within fourteen (14) days of service of those objections. *Id.* Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation may constitute a waiver of further appeal. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

**ENTERED** this 3rd day of August, 2016.

s/ Joe B. Brown
Joe B. Brown
U.S. Magistrate Judge